**Frame Estate**

*Fred T. Cadmus, 3rd,* for accountants.
*Ronald M. Agulnick,* for Myrtle T. Frame.
*William H. Mitman,* for L. Robert Frame.

KURTZ, JR., P. J., May 23, 1973.—Myrtle T. Frame, the widow of decedent, Leroy Frame, elected to take against her husband's will, thereby enhancing the share of his estate which she would have received had she elected to accept the terms of the will. After his executors had filed their first and final account, she took exception to the items of credit claimed therein which had to do with the sale of the assets of the estate. By that exception she claimed, under the heading "Disbursements—Administration Expenses," that three items of credit representing payments made by the executors to L. Robert Frame, one of decedent's surviving sons and an auctioneer, for expenses incurred in connection with the sale of real and personal property in the amount of $3,207.59; for his commissions on the sale of personal property in the amount of $2,083.08; and for his commission in the sale of the real estate in the amount of $6,900 were "excessive and unreasonable insofar as both expenses and commissions are charged whereas it is averred that the fair and reasonable charge therefor would include the expenses within the commission charged and not in addition thereto." This exception was dismissed by the auditing judge in his adjudication.

The widow has now taken exception to the dismissal of her original exception by the auditing judge. However, in the presentation of this exception she takes a new position, asserting for the first time that L. Robert Frame, the recipient of the payments claimed as credits by the executors, has failed to prove that he was a licensed real estate broker in this Com-

monwealth, as a consequence of which it is contended he cannot legally be paid a commission for the sale of real estate. In addition, when argument upon the exception was heard, counsel for exceptant asserted an additional ground for the refusal of the allowance of the credit claimed, pointing out that the said L. Robert Frame was the ultimate purchaser of decedent's farm at the auction over which he presided as auctioneer, having struck down the farm to his brother-in-law, one Fetters, the husband of one of the co-executors of the instant will, whose transactions are now the subject of this litigation. Fetters offered bids on behalf of the said L. Robert Frame without disclosing that fact to those assembled at the auction, and the said L. Robert Frame and his wife thereafter accepted title to the farm directly from the executors, at which time they paid the balance of the sale price of $115,000, that being the highest bid offered at the auction.

In this connection, it is to be noted that this exceptant does not now contend that the sale price thus obtained by the executors is not a full and fair one. If she has been damaged by the transaction, such damage arises solely through the payments listed above which the executors made to L. Robert Frame for services rendered by him in connection with the conduct of the auction. The only testimony as to whether these charges were fair came from the said Robert. He testified that they were computed in accordance with the prevailing standards for the making of such determination in this area at the time of the auction. He stated also that auctioneer's compensation for conducting auctions of personal property was computed at the rate of 10 percent of the amount realized thereby and that the prevailing rate for the offering of real estate in this fashion was six percent of that

amount. He testified further that the expenses incident to the conduct of such an auction were normally charged as additions to the auctioneer's commissions and that such charges represented the going rate then in effect and that which was considered fair in the industry. We note again that no testimony to the contrary has been offered.

The accountants contend that exceptant cannot now assert new grounds as the basis for her complaint. We do not believe that it is necessary for us to decide that question. In our view, the claims for credit here under attack ought not to be disallowed.

As the auctioneer who conducted the auction of the real estate, L. Robert Frame was executors' agent, owing a duty to them to fully disclose his adverse interest as a bidder at the sale: Restatement 2d, Agency, §§389, 390. There is no evidence before us that he did not disclose his position in this transaction. But, even, if we could properly infer nondisclosure on the part of the auctioneer from the circumstances surrounding the sale, that breach of duty on his part was waived by the executors when they conveyed title to the land in question to him and his wife and accepted the bid price from them in return. Obviously, by so doing, they ratified the transaction completely.

It goes without saying that the executors and the auctioneer should not be permitted to join forces in this matter to the detriment of decedent's widow: Restatement 2d, Trusts, §170. If one or the other of the parties to the sale profited at the widow's expense, she should not be made to bear the burden of that profit. In this connection, we point out again that exceptant has neither asserted nor proved that such a result has been produced.

The other reason asserted by exceptant in support of her position is likewise without merit. The Auc-

tioneers' License Act of September 29, 1961, P. L. 1745, sec. 6, 63 PS §706, provides that it is unlawful to engage in or carry on the business or act in the capacity of an auctioneer without a license from the Commonwealth so to do. Only a licensed auctioneer or a licensed apprentice may recover compensation for service rendered as an auctioneer: Section 29 of the act, 63 PS §729. Section 2 thereof, 63 PS §702, defines the term "auction" or "sale at auction" to mean "the verbal exchanges between an auctioneer . . . and the members of his audience, consisting of a series of invitations for offers for the sale of goods or real estate made by the auctioneer . . . , offers by members of the audience, and the acceptance of the highest or most favorable offer by the auctioneer." Thus, an auctioneer issues invitations for offers to an assemblage or audience and accepts the most favorable offer thereby obtained.

The activities of real estate brokers are governed by the provisions of the Real Estate Brokers License Act of May 1, 1929, P. L. 1216, as amended, 63 PS §431, et seq. Section 2 thereof, 63 PS §432, defines the term "real estate broker" to include all persons who, for another and for a fee, commission or other valuable consideration "sell, exchange, purchase, or rent, or . . . negotiate the sale, exchange, purchase or rental . . . of any real estate." Section 2(c) of that act recites that those who engage in certain specified transactions with regard to real estate shall not be included within that definition. The most recent amendment to that section, approved September 16, 1961, does not include auctioneers within the exempt status, although they were exempt by earlier versions of it.

Exceptant contends that the elimination of auctioneers from the list of those exempt from the provisions

of the Real Estate Brokers Act indicates a legislative intention that they also be licensed as real estate brokers if they are to conduct auctions of real estate. In our view this conclusion does not necessarily follow. It is just as reasonable to conclude that the legislature believed that the exemption of auctioneers from the provisions of that act was unnecessary in view of the fact that legislation providing for their licensure as auctioneers had already been passed by the legislature and was awaiting governor's approval when that amendment to the Real Estate Brokers Act was approved.[1]

An auctioneer solicits offers from an audience for the purchase of real or personal property, while a real estate broker sells or negotiates the sales of real estate through normal and customary commercial channels. Each is entitled to be properly compensated for the services rendered on the authority of his license. Although this record does not specifically indicate that L. Robert Frame was licensed under the provisions of the auctioneers' statute cited above, it does disclose that he was engaged in business as an auctioneer at the time the auction with which we are here concerned was held. Exceptant does not now contend that he was not so licensed. Accordingly, we conclude that he was entitled to be compensated for his services rendered to these accountants. We have already pointed out that the only testimony bearing upon the fairness of the compensation paid supports the conclusion that it was fair. If these sums

---

[1] House Bill 216 which eventually became the Act of September 29, 1961, P. L. 1745, 63 PS § 701, et seq., was originally passed by the House June 21, 1961. It was passed with amendment by the Senate on August 31, 1961, and the House concurred in that amendment September 1, 1961.

had not been paid to L. Robert Frame, the accountants would have been compelled to pay like amounts to another auctioneer. In these circumstances, the widow's exception is dismissed.

The accountants have taken exception to the auditing judge's reduction of their commissions from $8,735 as claimed in the account, to $6,511. The commissions allowed were computed on the basis of five percent of the inventory value of the personal property administered and three percent on the sale of the real estate. Auctioneer's expenses and commissions incurred in connection with the sale of both real and personal property totaled $12,190.67. Thus, commissions and expenses incurred in connection with the liquidation of the estate exceeded $10,000.

The record indicates that the auctioneer inventoried the personal property and thereafter supervised its display and arrangement in preparation for the auction. In addition, he was responsible for the advertising of the auction, which included the preparation of brochures describing the real estate and their distribution to those upon his mailing list who were thought to be prospective purchasers of property which was to be sold. These executors elected to entrust this phase of their administration to one who was experienced in the field. Having adopted this method for fulfillment of their fiduciary obligations, they cannot object to be compensated as if they themselves had performed those duties.

We recognize the rule that personal representatives are entitled to just compensation in accordance with the labor and responsibility involved in the settlement of the estate. Although these executors were required to assume a heavy responsibility in their administration of this estate, we have already noted that they delegated a major portion of that

responsibility to another. In our view, the compensation allowed by the auditing judge was full and fair in the circumstances. This exception to that allowance is dismissed.

All other exceptions filed by the parties were withdrawn by their counsel when argument was heard. For that reason, they need not now be considered.